Richter, J. (dissenting).
In this appeal, we are presented with the question of whether a police officer was justified in conducting a limited safety frisk when he reasonably suspected that the individual whom he was questioning was armed with a weapon that could harm the officer. In light of recent gang shootings in the area, furtive behavior by the individual in shoving a black *80 object into his pocket upon seeing the police, nervousness while being questioned, deceptive answers to the police officer’s inquiry, and the individual’s hand movement toward his pocket, we conclude that the officer had a reasonable suspicion that the individual was armed with a weapon, thus justifying the frisk.
We reject the majority’s attempt to paint this case as merely involving a police officer’s unsupported hunch. In fact, the record contains the requisite “specific and articulable facts” (People v Chestnut, 51 NY2d 14, 22 [1980], cert denied 449 US 1018 [1980]) upon which the officer reasonably acted. Nor do we accept the majority’s inflammatory accusation that upholding this frisk would “broadly expand[ ] the power of the police” in a way that would open the door to random stops of juveniles on the streets. In finding the stop and frisk here justified, we faithfully adhere to the principles enunciated by the Court of Appeals in People v De Bour (40 NY2d 210 [1976]) and People v Batista (88 NY2d 650 [1996]).[1]
Appellant was charged in a juvenile delinquency petition with acts which, if committed by an adult, would constitute, inter alia, the crime of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]). In a supporting deposition, Police Officer Orlando Colon stated that on February 18, 2010, at approximately 11:30 a.m., near 40 West Tremont Avenue in the Bronx, he observed appellant, a then 14-year-old teenager, in possession of a Colt .25 caliber semiautomatic firearm, which was loaded with one round of ammunition in the chamber and four rounds of ammunition in the magazine.
Appellant moved to suppress the weapon seized from him, and the court conducted a hearing on the motion. In denying the motion, the hearing court credited the testimony of Officer Colon, the presentment agency’s sole witness, and concluded that the police actions that culminated in recovery of the weapon were entirely reasonable and lawful.[2]
The unrebutted evidence at the suppression hearing established that on the morning of February 18, 2010, Officer Colon was on uniformed patrol in the Bronx in an unmarked van with three other officers. Their assignment that day was to visit ar *81 eas targeted by the precinct commander due to recent multiple shootings between members of two rival teenage gangs: the Burnside Money Getters and the River Park Tower Boys. Approximately six shootings had taken place in the recent weeks, including two that occurred two days earlier; the ages of those involved in the shootings were early teens to early 20s. Because the rivalry between the two gangs was ongoing, the police had set up a mobile command and designated three days to visit the targeted areas.
At approximately 11:30 a.m., Officer Colon and his fellow officers were riding near 40 West Tremont Avenue, an area within the territory of the Burnside Money Getters, and just four blocks from the scene of the two most recent shootings. From about 10 feet away, Officer Colon observed appellant on the corner holding a black object in his right palm, near his waist, and examining it; a cell phone was in appellant’s other hand. Appellant looked up, stared at the van, immediately shoved the black object into his right coat pocket, and began playing with his cell phone.
As appellant continued walking and playing with his phone, Officer Colon exited the van, approached appellant in a nonaggressive manner, and began a conversation; the other officers remained in the vehicle. At the hearing, Officer Colon explained that he approached appellant due to the recent shootings in the area, and because appellant, by shoving the black object into his pocket upon seeing the police van, appeared to be trying to conceal something that he did not want the public to see. In addition, the officer believed that appellant, who appeared to be a teenager, should have been in school at that time.[3] Officer Colon asked appellant where he was coming from and what he was doing. Appellant responded that he was traveling from Queens and was going to visit his stepbrother at the end of West Tremont Avenue. The officer described appellant’s demeanor during the conversation as “nervous.”
Based on appellant’s responses, Officer Colon believed that he was heading toward the vicinity of River Park Towers, which was in the territory of the River Park Tower Boys gang. Officer Colon asked appellant what he had been holding in his right hand. Appellant did not answer the question, and instead told the officer that he had a wallet in his back pants pocket. Officer *82 Colon’s suspicions were heightened because he observed appellant put the black object into his right coat pocket, not his back pants pocket. The officer told appellant he was not interested in what he had in his back pocket, but was interested in what he had put into his coat pocket. Appellant still did not explain what he had in his right coat pocket. Rather, he reached toward his right back pants pocket, and Officer Colon instructed him not to put his hands in his pocket. At the hearing, the officer explained that he was afraid for his safety, and in particular feared that appellant had a weapon, especially in light of the recent gang violence in the area among teenagers. Based on those concerns, Officer Colon tapped appellant’s right coat pocket, where he had seen him hide the black object, and felt a hard object.
Although Officer Colon was not certain what was in the pocket, he thought it could be a knife or other weapon. Because of that concern, the officer repositioned himself behind appellant for safety reasons in the event a struggle were to ensue, and tapped the pocket one more time. Officer Colon then reached into appellant’s pocket, and the officer’s hand “went right into the pistol grip of the firearm.” Officer Colon called out a code word to indicate to his fellow officers the presence of a firearm. One of those officers exited the van and held appellant while Officer Colon removed the firearm from appellant’s pocket. Appellant was then placed under arrest.
It is well settled that any inquiry into the propriety of police conduct must weigh the degree of intrusion entailed against the precipitating and attending circumstances out of which the encounter arose (see People v Salaman, 71 NY2d 869, 870 [1988]), and determine whether the intrusion was reasonably related in scope to the circumstances leading to the encounter (De Bour, 40 NY2d at 215). Furthermore,
“in this difficult area of street encounters between private citizens and law enforcement officers, [courts must not] attempt to dissect each individual act by the policemen; rather, the events must be viewed and considered as a whole, remembering that reasonableness is the key principle when undertaking the task of balancing the competing interests presented” (Chestnut, 51 NY2d at 23; see People v Celaj, 306 AD2d 71, 71-72 [2003], affd 1 NY3d 588 [2004]).
We conclude that the measured actions taken by Officer Colon were reasonable under all of the circumstances presented. In an *83 area where a series of teenage gang shootings had recently occurred, Officer Colon saw appellant stare at the police van and suddenly shove a black object he had been holding in his palm into his coat pocket. From the circumstances, it reasonably appeared to the officer that appellant was not simply placing the object in his pocket, but rather was hiding it from view. In addition, Officer Colon believed, albeit mistakenly, that school was in session that day, which raised a concern that appellant might be a truant (see Matter of Kennedy T., 39 AD3d 408 [2007]). Based on this combination of factors, the officer had, at least, an objective credible reason to approach appellant and ask for information (see De Bour, 40 NY2d at 223; People v Flynn, 15 AD3d 177, 178 [2005], lv denied 4 NY3d 853 [2005]; People v Steinbergin, 4 AD3d 192, 192 [2004], lv denied 3 NY3d 648 [2004], cert denied 543 US 1159 [2005]).
When Officer Colon asked basic nonaccusatory questions, appellant stuttered and appeared nervous, and when appellant gave his destination, the officer recognized it as a location connected with gang activity. This behavior, in conjunction with appellant’s furtive actions in hiding the black object, led the officer to have a founded suspicion that criminal activity was afoot, allowing him to engage in a common-law right of inquiry (see People v Hollman, 79 NY2d 181, 184-185 [1992]; Matter of Jamaal C., 19 AD3d 144, 145 [2005] [the appellant’s attempts to conceal a heavy object underneath his jacket suggested the presence of a weapon and justified, at least, a common-law inquiry]). Thus, contrary to appellant’s argument, he was not indiscriminately stopped merely because he was a teenager in a high crime area. Nor is it relevant that the initial tone of the conversation was “friendly.” Indeed, had Officer Colon acted in a more aggressive manner, that would have been inappropriate at this early stage.
Next, Officer Colon’s limited pat-down frisk of appellant’s coat pocket was reasonable under the circumstances. As the Court of Appeals reinforced in Batista (88 NY2d at 650):
“ ‘If we recognize the authority of the police to stop a person and inquire concerning unusual street events we are required to recognize the hazards involved in this kind of public duty. The answer to the question propounded by the policeman may be a bullet; in any case the exposure to danger could be very great. We think the frisk is a reasonable and constitutionally permissible precaution to minimize *84 that danger’ ” (id. at 654, quoting People v Rivera, 14 NY2d 441, 446 [1964], cert denied 379 US 978 [1965]).
Thus, the Court concluded that in order to justify a frisk, “the officer must have knowledge of some fact or circumstance that supports a reasonable suspicion that the suspect is armed or poses a threat to safety” (Batista, 88 NY2d at 654; see also Salaman, 71 NY2d at 870 [“where the officer is justified in believing that the suspect is armed, a frisk for weapons is permissible”]).
At a suppression hearing, an officer does not even have to “articulate any feeling of fear for his own [or others’] safety” as long as the situation presents “good cause for such fear” (Batista, 88 NY2d at 654 [internal quotation marks omitted]). Here, the testimony went beyond that required by Batista because Officer Colon specifically testified that he feared for his safety. And the facts presented at the hearing show that Officer Colon’s fear was reasonable under the circumstances. First, the officer was not on routine patrol, but was assigned to a specific detail tasked with investigating a number of recent teenage gang shootings in the area. Next, Officer Colon observed appellant — a teenager who, in the officer’s view, should have been in school that morning — holding a black object in the palm of his hand near his waist (see People v Rivera, 286 AD2d 235 [2001], lv denied 97 NY2d 760 [2002] [grasp at the waist is a telltale sign of a weapon]). As the hearing court aptly noted, black is a common color for weapons, and weapons are commonly held in one’s palm.
Officer Colon then saw appellant stare at the police van and immediately shove the black object into his coat pocket. Appellant’s eye contact with police, followed by his rapid concealment of the object, provided additional reason for the officer to suspect it was a weapon (see People v Omowale, 83 AD3d 614, 617 n 2 [2011], affd 18 NY3d 825 [2011] [eye contact may be weighed with other factors to determine if police officers reasonably fear for their safety]). The officer’s concerns that appellant possessed a weapon were further heightened by appellant’s stuttering and nervous behavior, and the fact that appellant was heading toward an area connected with the gang activity.
When asked what he had in his hand, appellant deflected the question, and told Officer Colon that he had placed a wallet in his back pants pocket. The officer knew this was false, because he had just seen appellant put the object in his front coat pocket. *85 Appellant’s deceptive answer to Officer Colon’s question, together with all of the previous information, provided the officer with a reasonable suspicion that appellant was armed. And when appellant moved his hand toward his pocket, it was reasonable for Officer Colon, who at that moment was alone with appellant on the street, to take the minimally intrusive, self-protective measure of patting down appellant’s coat pocket (see Batista, 88 NY2d at 654; People v Correa, 77 AD3d 555 [2010], lv denied 16 NY3d 742 [2011]; People v Jackson, 52 AD3d 400 [2008], lv denied 11 NY3d 833 [2008]; People v Mims, 32 AD3d 800 [2006]).
The majority mistakenly claims that we are justifying the frisk of appellant in the absence of a reasonable suspicion that he committed a crime. The same evidence that leads us to conclude that Officer Colon had a reasonable fear for his safety also supports a finding of a reasonable suspicion that appellant committed a crime, namely that he was armed with a weapon that could cause the officer harm. Thus, we need not address whether, in this case, the officer’s pat down would have been justified even at a level-two inquiry (see e.g. Correa, 77 AD3d at 555; People v Robinson, 278 AD2d 808, 808 [2000], lv denied 96 NY2d 787 [2001]; People v Chin, 192 AD2d 413 [1993], lv denied 81 NY2d 1071 [1993]), because here there were sufficient grounds to support a level-three frisk.
Finally, Officer Colon acted lawfully in reaching into appellant’s coat pocket and removing the weapon after the pat down. Although the officer could not know for certain what the “black,” “hard” object was when he tapped the outside of appellant’s coat pocket, he testified that he was concerned it could have been a weapon. Officer Colon did not say, as the majority contends, that the object “did not seem like a weapon.” In light of all of the preceding events, Officer Colon was justified in reaching into appellant’s pocket to rule out the possibility that the object was a weapon. The majority’s view that the officer had to be sure that the object was a weapon before taking steps to ensure his safety is contrary to existing precedent and would place the officer at undue risk (see People v Thanh Do, 85 AD3d 436 [2011], lv denied 17 NY3d 905 [2011] [after protective frisk failed to rule out possibility that object was a weapon, officer was justified in removing object from the defendant’s person]; People v Allen, 42 AD3d 331, 332 [2007], affd 9 NY3d 1013 [2008] [officer’s reasonable suspicion that defendant “might be concealing a weapon” justified frisk]; People v Mims, 32 AD3d *86 at 800 [officer who touched bulge and felt a hard object that he reasonably believed could be a gun was entitled to reach into the area and remove the object]; People v Johnson, 22 AD3d 371, 372 [2005], lv denied 6 NY3d 754 [2005] [officer justified in removing object from pocket where he “was concerned that it might have been a weapon”]; People v Greenidge, 241 AD2d 395, 395 [1997], affd 91 NY2d 967 [1998] [upon feeling weighty object inside pouch “that felt like it might be a gun,” the police properly opened the pouch]). It is undisputed that “[reasonable suspicion, not absolute certainty, is the applicable standard” (Chestnut, 51 NY2d at 22). And when the officer felt the pistol grip of a gun, he properly removed the weapon (see People v Davenport, 9 AD3d 316 [2004], lv denied 3 NY3d 705 [2004]; People v Brown, 277 AD2d 107, 108 [2000], lv denied 96 NY2d 756 [2001]).
Ignoring the court’s determination that Officer Colon was a credible witness, the majority asserts that there was no reasonable threat to his safety, and that the hearing court’s findings otherwise were based on a “bare assertion” by Officer Colon. In so doing, the majority gives short shrift to the well-settled principle that “[t]he credibility findings of a hearing court are accorded great deference and will not be disturbed unless a police officer’s testimony is manifestly untrue, physically impossible, contrary to experience, or self-contradictory” (People v Moore, 93 AD3d 519 [2012], lv denied 19 NY3d 865 [2012] [internal quotation marks omitted]).
In concluding that the search here was justified, we fully recognize that there are situations in which the police abuse their authority to stop and frisk young people, but here, Officer Colon acted appropriately consistent with the steps required by the law. Although the majority portrays this case as a police officer detaining a teenager on the street based only on “vague concerns about age and gender” and “presence in a bad neighborhood,” the evidence at the suppression hearing showed nothing of the sort. The majority either ignores or minimizes the wealth of facts supporting the officer’s safety concerns, including his testimony about the gang activity, appellant’s concealing the object upon seeing the police, appellant’s nervous behavior and deceptive answers when questioned, and appellant’s reaching for his pocket. Thus, Officer Colon’s testimony that he patted down appellant’s coat pocket because he feared that appellant had a weapon was neither a “bare assertion” nor an “unsubstantiated claim,” as the majority posits, but was *87 well supported by the evidence in this developing street encounter.
In rejecting Officer Colon’s statement that he reasonably feared for his safety, the majority makes a number of unwarranted assertions. First, the majority argues that the officer could not have been concerned for his safety because he “presumably . . . knew [the back pocket] contained a wallet.” This is merely speculation because the officer never gave any such testimony. Next, the majority makes the puzzling claim that Officer Colon’s instructing appellant not to put his hands in his pocket was not an expression of fear for personal safety. In fact, just the opposite is true — the officer told appellant not to reach for his pocket precisely because he was concerned there was a weapon. That concern was further elucidated by Officer Colon’s repositioning of himself behind appellant for safety reasons after he felt the hard object.
Finally, the majority places undue emphasis on the fact that Officer Colon did not frisk the back pocket where appellant was reaching, but instead tapped the front coat pocket. Officer Colon’s action made perfect sense because he had observed appellant place the black object in his front pocket. What reasonably caused Officer Colon to fear for his safety was the movement of appellant’s hand on the same side of the body as the suspected weapon. Because the determination of the hearing court, which saw and heard Officer Colon testify, was not “plainly unjustified or clearly erroneous,” it is improper for the majority to substitute its own fact findings (People v Greene, 84 AD3d 540, 541 [2011] [internal quotation marks omitted]).
The majority attempts to distinguish Batista on its facts, but cannot dispute its core holding — that a frisk is justified if the police have knowledge of facts or circumstances supporting a reasonable suspicion that the suspect is armed or poses a threat to safety. We, along with the other Departments, have repeatedly applied Batista in upholding frisks based on concerns about officers’ safety (see e.g. People v Davenport, 92 AD3d 689 [2012]; People v Butler, 81 AD3d 484 [2011], lv denied 16 NY3d 893 [2011]; People v Caicedo, 69 AD3d 954 [2010], lv denied 14 NY3d 886 [2010]; People v Martinez, 39 AD3d 1159 [2007], lv denied 9 NY3d 867 [2007]; People v Douglas, 309 AD2d 517 [2003], lv denied 1 NY3d 596 [2004]; People v Crespo, 292 AD2d 177 [2002], lv denied 98 NY2d 709 [2002]; People v Siler, 288 AD2d 625 [2001], lv denied 97 NY2d 709 [2002]; People v Robinson, 278 AD2d 808 [2000], lv denied 96 NY2d 787 [2001]).
*88 As noted earlier, in assessing the propriety of the police conduct here, we must consider whether the intrusion was reasonably related in scope to the circumstances leading to the encounter (De Bour, 40 NY2d at 215). Here, Officer Colon’s actions were minimally intrusive and a measured response to the situation he faced. At no point did he draw his weapon, place appellant in handcuffs, or otherwise restrain appellant’s movement. When appellant became evasive in the face of the officer’s question and began moving his hand, the officer did not immediately enter the coat pocket. Instead, he tapped on the pocket, and then tapped again, in an attempt to ascertain the nature of what appellant hid in his pocket. Only after he felt a hard object did he make the reasonable decision to enter the pocket. Even then, he did not immediately pull the object out, but removed it only when he felt the pistol grip of a weapon.
The majority believes that Officer Colon should not have frisked appellant, even after appellant began to move his hand. But had the officer refrained from conducting a limited pat down, appellant would have had the opportunity to actually reach into the front pocket where the weapon was located, which was the officer’s safety concern. Under these circumstances, it would be unrealistic to require Officer Colon to assume the risk that appellant’s conduct was “innocuous or innocent” (People v Benjamin, 51 NY2d 267, 271 [1980]). As the Court of Appeals has observed: “[W]here . . . police officers find themselves in a rapidly developing and dangerous situation presenting an imminent threat to their well-being, they must be permitted to take reasonable measures to assure their safety and they should not be expected to await the glint of steel before doing so” (People v Allen, 73 NY2d 378, 380 [1989] [internal quotation marks omitted]; see Davenport, 92 AD3d at 691; People v Bracy, 91 AD3d 1296, 1298 [2012]; Brown, 277 AD2d at 108).
Moskowitz and Román, JJ., concur with Tom, J.P.; Richter and Abdus-Salaam, JJ., dissent in a separate opinion by Richter, J.
Order of disposition, Family Court, Bronx County, entered on or about April 1, 2010, reversed, on the law, without costs, and the delinquency petition dismissed.

. The majority, by citing to the federal litigation over the city’s stop and frisk policy, inappropriately seeks to turn this family court appeal, in which we disagree over whether the officer’s observations were sufficient to support a reasonable concern for his safety, into a referendum on the New York Police Department’s policing tactics. It is nothing of the sort.

. Appellant did not testify or call any witnesses at the hearing.

. Although it turned out that school was not in session that day, Officer Colon testified that he was not aware of that fact.